UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FREDRICK WYKME BROWN,

        Petitioner,

v.                          Case No: 2:13-cv-602-FtM-29MRM

FLORIDA ATTORNEY GENERAL,

        Respondent.

_____

**OPINION AND ORDER**

This matter comes before the Court upon review of the file. Petitioner Fredrick Wykme Brown ("Petitioner" or "Brown"), initiated this action by filing a *pro se* 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (Doc. #1, "Petition") on August 19, 2013.[1]  Pursuant to the Court's Order to respond and show cause why the Petition should not be granted (Doc. #10), Respondent filed

---

[1] The Court deems a petition "filed" by an inmate when it is delivered to prison authorities for mailing. <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001).  Absent evidence to the contrary, the date of filing is assumed to be the date the inmate signed the document.  <u>Id.</u>  If applicable, the Court also gives a petitioner the benefit of the state's mailbox rule with respect to his state court filings when calculating the one-year limitations period under 28 U.S.C. § 2244(d).  Under Florida's inmate "mailbox rule," Florida courts "will presume that a legal document submitted by an inmate is timely filed if it contains a certificate of service showing that the pleading was placed in the hands of prison or jail officials for mailing on a particular date, if . . . the pleading would be timely filed if it had been received and file-stamped by the Court on that particular date." <u>Thompson v. State</u>, 761 So. 2d 324, 326 (Fla. 2000).

a Response (Doc. #19, Response).   Respondent asserts that the
Court should not address the merits of the Petition because the
Petition is time barred under 28 U.S.C. § 2244(d).[2]  Recognizing

---

[2]On April 24, 1996, the President signed into law the
Antiterrorism and Effective Death Penalty Act of 1996
(hereinafter
AEDPA).   This law amended 28 U.S.C. § 2244 by adding the
following new subsection:

(d)(1) A 1-year period of limitation shall apply to
an application for a writ of habeas corpus by a person
in custody pursuant to the judgment of a State court.
The limitation period shall run from the latest of -

(A) the date on which the judgment became
final by the conclusion of direct review or
the expiration of the time for seeking such
review;

(B) the date on which the impediment to
filing an application created by State
action in violation of the Constitution or
laws of the United States is removed, if
the applicant was prevented from filing by
such State action;

(C) the date on which the constitutional
right asserted was initially recognized by
the Supreme Court, if the right has been
newly recognized by the Supreme Court and
made retroactively applicable to cases on
collateral review; or

(D) the date on which the factual predicate
of the claim or claims presented could have
been discovered through the exercise of due
diligence.

(2) The time during which a properly filed
application for State post-conviction or other
collateral review with respect to the pertinent
judgment or claim is pending shall not be counted

that the action may be considered timely, if the Court finds
Petitioner's appeal was "properly filed," Respondent addresses the
merits of each of the seven grounds for relief raised in the
Petition.  Respondent submits exhibits (Exhs. 1-29) in support of
the Response.  See Appendix of Exhibits (Doc. #21-1).  Petitioner
filed a reply to the Response (Doc. #2, Reply).  This matter is
ripe for review.

## I.   The Petition is Timely Filed

Brown challenges his 2007 trial-based judgment of robbery
with a firearm causing death and second degree murder with a
firearm entered in the Twentieth Judicial Circuit Court, Lee
County, Florida (case number 06-CF-16972).  Petition at 1;
Response at 1.  Brown was sentenced to forty years imprisonment
on both counts with a minimum mandatory term of twenty-five years
on both counts to run concurrently.  Response at 3; Exh. 1a at 50.
Brown's sentences and conviction were *per curiam* affirmed on direct
appeal on **April 25, 2008.**  Exh. 4.  Consequently, Brown's state
conviction became final on **Thursday, July 23, 2008.**  See 28 U.S.C.
§ 2244(d)(1)(A) and Rule of the Supreme Court of the United States,
Rule 13.3 (ninety days after entry of the judgment or order sought

---

toward any period of limitation under this
subsection.

to be reviewed).[3]  This was _after_ the April 24, 1996, effective date of the AEDPA.   Thus, Petitioner's one-year time period for filing a federal habeas challenging his conviction expired on **Thursday, July 23, 2009.**[4]  Consequently, the Petition filed in this Court on August 19, 2013, would be untimely, unless Petitioner availed himself of one of the statutory provisions that extends or tolls the time period.

Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the time that "a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  Here, **168 days** of the federal limitations period elapsed before Petitioner filed his first state post-conviction motion - - a motion pursuant to Florida Rule of Criminal Procedure 3.850 filed on **January 7, 2009**.  See Exh. 6.  On **January 23, 2009**, the post-conviction trial court struck the motion as facially insufficient.  Exh. 7.  Petitioner filed an appeal of the ruling on **February 18, 2009**.  Exh. 8.  The appellate

---

[3] A conviction is deemed final upon "the conclusion of direct review or the expiration of the time for seeking such review."  20 U.S.C. § 2244(d)(1)(A).  For purposes of direct review, Supreme Court Rule 13.3 states, in pertinent part, that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate[.]"

[4] Applying "anniversary date of the triggering event." Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008).

court entered an order on **June 11, 2010**, dismissing the appeal for lack of jurisdiction, without prejudice, because the post-conviction trial court's order was a non-final order, but invited Petitioner to file an amended Rule 3.850 motion in the post-conviction court within thirty days from the date on the order. Exh. 11.  The appellate court permitted Petitioner an opportunity to file an amended Rule 3.850 motion because the post-conviction court's order did not specify a time for Petitioner to file an amended Rule 3.850 motion, noting that Petitioner's two-year deadline to file a Rule 3.850 motion expired by the time the appellate court issued its order.  Id. at 2.  Petitioner filed an amended Rule 3.850 motion on July 12, 2010, which was within the appellate court's deadline.

Respondent acknowledges that if the Court determines Petitioner's appeal of the denial of his initial Rule 3.850 motion was "properly filed," then the instant § 2254 Petition is timely. Response at 15.  Petitioner garners tolling of the AEDPA statute of limitations when he filed his initial Rule 3.850 motion even though the postconviction court deemed the motion "facially insufficient."  Green v. Tucker, Case No. 2:12-cv-17-FtM-99 SPC, 2013 WL 351870 *1 (M.D. Fla. Jan. 29, 2013).

As previously stated, under § 2244(d)(2), the limitations period is tolled during a properly filed application for state post-conviction relief.  An application is properly filed "when

its delivery and acceptance are in compliance with the applicable laws and rules governing files. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). Filing conditions encompass more than merely conditions necessary "to get a clerk to accept [a] petition," and include more requirements that "often necessitate judicial scrutiny." Pace v. DiGuglielmo, 554 U.S. 408, 414-15 (2008).

Respondent points to Green v. Tucker, Case No. 2:12cv17-FtM-99SPC, 2013 WL 351870 (11th Cir. 2013), and argues that the instant Petition is untimely because Petitioner did not garner any tolling of the federal statute of limitations when he filed his appeal on February 18, 2009, following the postconviction court's order striking his facially insufficient Rule 3.850 motion. Response at 10. However, unlike the petitioner in Green who did not appeal the post-conviction court's order, Petitioner Brown timely appealed the post-conviction court's order striking his facially insufficient motion in compliance with the appellate court's order. See Evans v. Chavis, 546 U.S. 189, 191 (2006) ("[t]he time that an application for state post-conviction review is pending includes the time period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal,

*provided that* the filing of the notice of appeal is timely under state law.")(italics in original, citations omitted)).

Respondent further points to Green to support the proposition that Petitioner's AEDPA clock should not be tolled during the pendency of his appeal and submits the post-conviction court's order was non-final and therefore not appealable. To the contrary, in Green, the district court discussed a Rule 3.850 motion that was stricken for facial insufficiency noting that under Florida law it remained unclear whether a motion stricken for facial insufficiency was appealable. Id. at *2 (emphasis added) (citing Howard v. State, 978 So. 2d 635, 636 (Fla. 5th DCA 2008); Smith v. State, 100 So. 3d 201, 202 (Fla. 2d DCA 2012)).

The instant case is distinguishable from Green. Here, the appellate court dismissed Petitioner's appeal for lack of jurisdiction, but permitted Petitioner an opportunity to file an amended Rule 3.850 motion because the post-conviction court never specified a time within which Petitioner should file the amended motion. Petitioner then timely filed an amended Rule 3.850 motion as directed in the appellate court's order. Petitioner Green, who did not appeal the post-conviction court's order striking his legally insufficient Rule 3.850 motion, requested that the district court toll his statute of limitations from the date he filed his initial Rule 3.850 to the date he filed his amended Rule 3.850. Id. at *2. The district court declined to toll the time

for Petitioner Green because once the post-conviction court struck Green's Rule 3.850 as facially insufficient, the Court determined the 3.850 motion was no longer deemed properly filed under applicable precedent.  Id. at *3.  The test of finality, as articulated by Florida case law, is "whether the order in question constitutes the end of judicial labor in the case, and nothing further remains to be done by the court to fully effectuate a termination of the cause as between the parties directly affected." Green, 2013 WL 351870 *2 (citing S.L.T. Waterhouse Co. v. Webb, 304 So. 2d 97, 99 (Fla. 1974)).  Petitioner allowed less than one month of time to lapse between the dismissal of his Rule 3.850 as facially insufficient and the date he filed his appeal.  Because the appellate court allowed Petitioner time to file an amended Rule 3.850 motion, in part due to the post-conviction court's failure to specify a time to file an amended Rule 3.850 motion, this Court finds Petitioner is entitled to tolling during the pendency of his appeal.  Consequently, the instant Petition is timely.  The Court will now turn to address the merits of the grounds raised in the Petition.

## II.  Applicable § 2254 Law

### A.  Deferential Review Required By AEDPA

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Abdul-Kabir v.

- 8 -

<u>Quarterman</u>, 550 U.S. 233, 246 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792 (2001).  Consequently, post-AEDPA law governs this action.  <u>Abdul-Kabir</u>, 550 U.S. at 246; <u>Penry</u>, 532 U.S. at 792; <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).

Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  <u>Cullen v. Pinholster</u>, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011).  "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt."  <u>Id.</u> (internal quotations and citations omitted).  <u>See also</u> <u>Harrington v. Richter</u>, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." <u>Childers v. Floyd</u>, 642 F.3d 953, 967-68 (11th Cir. 2011).  Thus,

a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court.  Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision).  "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new

context." _Ponticelli v. Sec'y, Fla. Dep't of Corr._, 690 F.3d 1271, 1291 (11th Cir. 2012) (internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in _Harrington v. Richter_, 131 S. Ct. at 770. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. _Id._ (citations omitted). Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." _Stephens v. Hall_, 407 F.3d 1195, 1201 (11th Cir. 2005). The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." _Cullen_, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. _Id._

**B.  Federal Claim Must Be Exhausted in State Court**

Ordinarily, a state prisoner seeking federal habeas relief must first "'exhaus[t] the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts

- 11 -

'the first opportunity to address the correct alleged violations of [the] prisoner's federal rights.'" Walker v. Martin, 562 U.S. 307, 316 (2011) (quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991)).  This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.  Rhines v. Weber, 544 U.S. 269, 274 (2005). "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.  That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) and Castile v. Peoples, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court to consider.  A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983).  A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam).  "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift

needles in the haystack of the state court record.'" McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief . . . . ." Smith, 256 F.3d at 1138. A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).

C. **Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance

of counsel raised in this case.  Newland, 527 F.3d at 1184.  In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8, 130 S. Ct. 13, 16 (2009); Cullen v. Pinholster, 131 S. Ct. at 1403 (2011)

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices."  Bobby Van Hook, 130 S. Ct. at 17 (internal quotations and citations omitted).  It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable."  Jones v.

- 14 -

Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must
"judge the reasonableness of counsel's conduct on the facts of the
particular case, viewed as of the time of counsel's conduct," Roe
v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland,
466 U.S. at 690), applying a "highly deferential" level of judicial
scrutiny.  Id.  A court must adhere to a strong presumption that
"counsel's conduct falls within the wide range of reasonable
professional assistance."  Strickland, 466 U.S. at 689.  An
attorney is not ineffective for failing to raise or preserve a
meritless issue.  Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.
1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir.
1992) ("a lawyer's failure to preserve a meritless issue plainly
cannot prejudice a client").  "To state the obvious: the trial
lawyers, in every case, could have done something more or something
different.  So, omissions are inevitable.  But, the issue is not
what is possible or 'what is prudent or appropriate, but only what
is constitutionally compelled.'"  Chandler v. United States, 218
F.3d 1305, 1313 (11th Cir. 2000) (quoting Burger v. Kemp, 483 U.S.
776, 794 (1987)).

### III.  Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the
reasons set forth below, concludes no evidentiary proceedings are
required in this Court.  Schriro v. Landrigan, 550 U.S. 465, 127
S. Ct. 1933, 1939-40 (2007).  Petitioner does not proffer any

evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.  Schriro, 550 U.S. at 474; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

**A.   Ground One**

Petitioner submits that he has "newly discovered evidence." This newly discovered evidence consists of alleged false testimony provided by a witness named "Queenetta," who is Petitioner's sister. Petition at 5.  The Petition does not contain any other facts elaborating on this claim.

In Response, Respondent contends that the issue of whether this claim constitutes newly discovered evidence concerns only a matter of state law for which federal jurisdiction does not lie. Response at 25.  Respondent further submits that ground one is unexhausted and procedurally defaulted because Petitioner only presented this claim in terms of state law in his post-conviction filings and did not alert the state court's about a potential federal constitutional violation.  Id. at 27.

Turning to the merits, Respondent argues that the state court's denial is entitled to deference under § 2254(d)(1). Respondent explains that in ground one Petitioner claims his sister, Queenetta Marshal, provided false testimony.  Respondent

notes that Petitioner previously directed the post-conviction court to an affidavit presumably signed by his sister, which states that she was "forced or coerced" to testify as to the Petitioner's involvement.  Response at 28.

## 1. Exhaustion and procedural default

As discussed above, a petitioner who fails to raise his federal claims in the state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause and prejudice, or a fundamental miscarriage of justice.  Supra at 11-13.

A review of the record confirms that Respondent is correct concerning Petitioner's failure to exhaust this claim.  Response at 26-27.  In Petitioner's Rule 3.850 motion, Petitioner only claimed "newly discovered evidence."  Exh. 12 at 7-8.  Petitioner never raised a violation of federal law, or the federal constitution.  The Rule 3.850 motion did not cite any cases referencing a violation of the federal constitution.  For a habeas petitioner to fairly present a federal claim to the state courts:

> It is not sufficient merely that the federal habeas petition has been through the state courts. . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made.  Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."  While we

> do not require a verbatim restatement of the
> claims brought in state court, we do require
> that a petitioner presented his claims to the
> state court "such that a reasonable reader
> would understand each claim's particular legal
> basis and specific factual foundation."

McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005).

Petitioner did not alert a "reasonable reader" at the state court

to a possible violation of federal law.  Consequently, the Court

finds that Ground One is unexhausted and procedurally defaulted.

**2.  Merits**

Petitioner's claim amounts to one of actual innocence.

Petitioner contends that his sister's testimony was false and was

used to convict him.  To successfully plead actual innocence, a

petitioner must show that this conviction resulted from 'a

constitutional violation.'" Johnson v. Fla. Dep't of Corr., 513

F.3d 1328, 1334 (11th Cir. 2008) (quoting Schlup v. Delo, 513 U.S.

298, 327 (1995)).  The actual innocence claim addressed in Schlup

is "not itself a constitutional claim, but instead a gateway

through which a habeas petitioner must pass to have his otherwise

barred constitutional claim considered on the merits." Schlup,

513 U.S. at 315 (quotation marks omitted).  See also Herrera v.

Collins, 506 U.S. 390, 400 (1993) (holding "[c]laims of actual

innocence based on newly discovered evidence have never held to

state a ground for federal habeas relief absent an independent

constitutional violations occurring in the underlying state criminal proceedings.").

A claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Johnson v. Fla. Dep't of Corr., 513 F.3d at 1334. The petitioner "must demonstrate that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," and "must raise sufficient doubt about his guilt to undermine confidence in the result of the trial." Johnson v. Fla. Dep't of Corr., 513 F.3d at 1334. "Actual innocence" means "factual innocence, not mere legal sufficiency." Id. (quotation marks and alternation omitted).

Here, Petitioner's newly discovered evidence consists of Petitioner's sister's statement recanting her trial testimony. Based on this record, there are insufficient grounds to disturb the post-conviction court's finding that the recantation was not credible and did not constitute newly discovered evidence. See Exh. 14d at 3-4. Even if the trial court found the recantation to be credible, which it did not, the recanted testimony is not a basis for federal habeas corpus relief absent an independent constitutional violation occurring in the underlying state

criminal proceedings. <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1065 (11th Cir. 2002) (quoting <u>Herrera</u>, 506 U.S. 390, 400 (1993) (citations omitted)). Accordingly, in the alternative, Petitioner is denied relief on Ground One on its merits.

### B. Ground Two

Petitioner contends that there was a change in the law concerning the jury instruction that was read to the jury and that the manslaughter instruction constituted a fundamental error. Petition at 7. Specifically, Petitioner submits that "intended to kill" is not an element of manslaughter by act. <u>Id.</u> In Reply, Petitioner for the first time alleges that the erroneous instruction violated his due process rights. Reply at 9.

In Response, Respondent contends that the claim concerns only a matter of state law for which federal habeas corpus relief does not lie. Response at 25-26. Respondent also contends that ground two is not exhausted and is now procedurally defaulted. <u>Id.</u> Turning to the merits, Respondent contends that the jury instruction was not so misleading as to violate Petitioner's right to due process. <u>Id.</u> at 32.

### 1. Exhaustion and procedural default

A review of the record confirms that Petitioner raised a claim concerning the jury instruction error on direct appeal. Exh. 2. However, Petitioner did not exhaust the federal constitutional dimension of this claim before the state courts to allow a

reasonable reader to know Petitioner intended to raise a federal due process claim.  Petitioner argued, in terms of state law only, that the trial court erred with respect to the jury instruction. Id.  Additionally, the Court notes that Petitioner raised a claim concerning the jury instruction in a subsequent Rule 3.850 motion. Pertinent to the review of the merits of this claim, the post-conviction court determined that Petitioner's Rule 3.850 motion, which raised the claim only in terms of state law violations was procedurally barred, untimely and successive.  Exh. 26, Exh. 27, Exh. 28.  Consequently, Ground Two is unexhausted and now procedurally defaulted.  See Joseph v. Sec'y Dep't of Corr., 567 F. App'x 893, 894 (11th Cir. 2014) (recognizing that the district court was not required to address the merits of procedurally defaulted jury instruction claim when the petitioner had raised the claim only terms of a violation of state law).

### 2. Merits

An error in instructing the jury cannot constitute a basis for federal habeas relief unless the error "so infected the entire trial that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  See also Agan v. Vaughn, 119 F.3d 1538, 1545 (11th Cir. 1997), cert. denied, 523 U.S. 1023 (1998)(stating "[a] defendant's right to due process is not violate unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial

unfair.").   In other words, the Court views the instruction not in isolation, but in light of the entire trial.   Id. (citing Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983)).

A review of the Florida law history on the manslaughter by act instruction sets the context for Petitioner's claim.   At the time of Petitioner's trial in January 2007, the 2006 version of the manslaughter by intentional act jury instruction provided that a defendant was guilty of manslaughter by act if he intentionally caused the death of the victim.   The 2006 version also included the following language: "In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death."   See Montgomery v. State, 39 So. 3d 252, 256 (Fla. 2010).

On March 14, 2007, in Hall v. State, 951 So. 2d 91 (Fla. 2d DCA 2007), Florida's Second District Court of Appeal concluded that this pattern instruction was not erroneous because it did not require an intent to kill—-rather it required "an intentional act that 'caused the death of' the victim[.]"   Id. at 96; see also Zeigler v. State, 18 So. 3d 1239, 1244 (Fla. 2d DCA 2009) ("[W]e believe that the Hall court was correct when it stated that the previous manslaughter by act instruction was not an erroneous statement of the law.").

On February 12, 2009, Florida's First District Court of Appeal disagreed with the Second District's Hall opinion and held that

the standard manslaughter by act jury instruction improperly imposed the element of intent to kill that was not required under Florida law for the offense of manslaughter by act and was therefore fundamentally erroneous. Montgomery I, 70 So. 3d at 604-608. The Montgomery I court went on to hold that the instruction read to the jury in that case improperly imposed the intent element when it tracked the language of the standard jury instruction for manslaughter by act, providing that the state had to prove that Montgomery "intentionally caused [the victim's] death" in order to establish that he committed manslaughter. Id. Finding that Montgomery's conviction for second-degree murder was only one step removed from the lesser included offense of manslaughter, the court held that giving the erroneous instruction was fundamental error and reversible *per se*. Id. The court remanded the case to the trial court for a new trial and certified the following question to the Florida Supreme Court: "is the state required to provide that the defendant intended to kill the victim in order to establish the crime of manslaughter by act?" Id. at 608.

On May 7, 2009, the Florida Supreme Court accepted jurisdiction to consider the issue. State v. Montgomery, 11 So. 3d 943 (Fla. 2009). On April 8, 2010, the Florida Supreme Court approved the decision of the First District Court of Appeal. State v. Montgomery, 39 So. 3d 252, 259-60 (Fla. 2010) ("Montgomery II").

The court answered the certified question in the negative, and held that the intent that the state must prove for the purpose of manslaughter by act is the intent to commit an act that was not justified or excusable, causing the death of the victim.

In reaching its decision in Montgomery II, the Florida Supreme Court focused on whether the erroneous instruction pertained to a crime that was one step removed from the crime for which the defendant was convicted, not the crime charged. Montgomery II, 39 So. 3d at 259. In Florida, the necessarily lesser included offense of manslaughter is just one step removed from second-degree murder. Id. Since Montgomery's conviction for second-degree murder was only one step removed from the necessarily lesser included offense of manslaughter, the court held that fundamental error occurred in his case because the manslaughter jury instruction erroneously imposed upon the jury a requirement to find that Montgomery intended to kill the victim. Id. (citing Pena v. State, 901 So. 2d 781, 787 (Fla. 2005) ("If the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense.")).

Following the Florida Supreme Court's decision in Montgomery II, Florida's Second District Court of Appeal distinguished Montgomery II in a line of cases where the jury was instructed on

both manslaughter by intentional act and manslaughter by culpable negligence, as was the case in Petitioner Brown's trial.  In those cases where the trial judge read both instructions to the jury, the Second District found no fundamental error requiring reversal of a defendant's conviction for second-degree murder.  Barrios-Dias v. State, 41 So. 3d 370 (Fla. 2d DCA 2010); Nieves v. State, 22 So. 3d 691 (Fla. 2d DCA 2009).

On February 4, 2011, Florida Second District Court of Appeal in Haygood v. State, 54 So. 3d 1035 (Fla. 2d DCA 2011), recognized and adhered to the decisional law of the Second District and affirmed on direct appeal a second-degree murder conviction where both standard jury instructions on manslaughter were given. However, the appellate court certified the following question to the Florida Supreme Court:

> "If a jury returns a verdict finding a defendant guilty of second-degree murder in a case where the evidence does not support a theory of culpable negligence, does a trial court commit fundamental error by giving a flawed manslaughter by act instruction when it also gives an instruction on manslaughter by culpable negligence?"

Haygood, 54 So. 3d at 1038.  On February 14, 2013, the Florida Supreme Court answered the certified question in the affirmative, holding that the above-cited intermediate courts were wrong and that the structural error persists even when the manslaughter by culpable negligence instruction was given along with the incorrect

pattern manslaughter by act instruction.  Haygood v. State, 109 So. 3d 735 (Fla. 2013).

At the time of Petitioner's direct appeal in December 2007, counsel argued that the trial court erred in giving the manslaughter instruction because the court failed to give the definitions with regard to the manslaughter offenses.  Exh. 2 at 6-7.  Appellate counsel did not foresee or raise any issue concerning the "intent" portion of manslaughter by act instruction.[5]  See generally Exh. 2.  The appellate court per curiam affirmed Petitioner's convictions and sentence on April 25, 2008.  Exh. 3.

Petitioner then filed a pro se motion for post-conviction relief under Rule 3.850 in July 2010.  At this time, the Florida Supreme Court's opinion in Montgomery had issued and Petitioner asserted a "change in law" occurred and that his jury instruction on manslaughter constituted a fundamental error.  Exh. 12 at 8-9.  However, as previously noted, at this time the Second District Court of Appeal deemed no fundamental error under Florida law in cases where the jury was instructed on both manslaughter by act

---

[5] The Petition does not raise an ineffective assistance of counsel claim related to the jury instruction claim.  And, even if the Petition did, the ground would be denied.  Rambaran v. Sec'y Dep't of Corr., 821 F.3d 1325 (11th Cir. 2016) (reversing district court order granting a § 2254 habeas petition finding that counsel rendered deficient performance under Strickland for not preserving issue concerning faulty manslaughter by act jury instruction).

and manslaughter by culpable negligence. Supra at 25. Accordingly, the post-conviction court found no fundamental error in Petitioner's case and further found no ineffective assistance of counsel related thereto. Exh. 14d at 665.

In November 2013, Petitioner raised the jury instruction claim again in terms of only Florida law in another Rule 3.850 motion. Exh. 23. After briefing from the State, Exh. 25, the post-conviction court recognized sua sponte that the Florida Supreme Court had issued Haygood and nevertheless denied Petitioner relief on his jury instruction claim because Petitioner could not establish the manifest injustice exception to his untimely, successive, and procedurally-barred claim raised in his successive Rule 3.850 motion. Exh. 26 at 3. Analogizing Petitioner's situation to cases where a habitual offender designation is erroneously given, but such designation would remain intact due to other counts, the post-conviction court noted that Petitioner was convicted of both second-degree murder and robbery with a firearm and sentenced to forty years with a twenty-five minimum mandatory on each conviction. Thus, the post-conviction court reasoned that irrespective of the alleged faulty manslaughter jury instruction, Petitioner would serve the same exact sentence for his conviction of robbery with a firearm. Exh. 26 at 3-4.

Here, the Court finds Petitioner fails to demonstrate that the State trial court's instruction on manslaughter, viewed in light of the trial record, so infected the trial that his convictions violate federal due process standards. A review of Florida law evidences that an erroneous instruction on manslaughter by act was presented to the jury. The instruction was not erroneous at the time of Petitioner's trial, but years later the Florida Supreme Court determined the instruction was erroneous because the Florida statute setting forth the elements for manslaughter did not include "intent." The issue here, however, is "not merely whether 'the instruction is undesirable, erroneous, or even 'universally condemned.'" Henderson, 431 U.S. at 154. Instead, as previously mentioned, the standard is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. "It is a rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made to the trial court." Id.

The jury instruction in pertinent part read as follows:

> Murder in the second degree includes the lesser crime of Manslaughter, both of which are unlawful.
>
> A killing that is excusable or was committed by the use of justifiable deadly force is lawful.

If you find Maurice Anton Larry was killed by Fredrick Wykme Brown, you will then consider the circumstances surrounding the killing in deciding if the killing was murder in the Second Degree or was Manslaughter, or whether the killing was excusable or resulted from justifiable use of deadly force.

The killing of a human being is justifiable homicide and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant, or to commit a felony in any dwelling house in which the defendant was at the time of the killing. The killing of a human being is excusable, and therefore lawful, under any one of the following three circumstances:

1. When the killing is committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any unlawful intent, or

2. When the killing occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or

3. When the killing is committed by accident and misfortune resulting from a sudden combat, if a dangerous weapon is not used and the killing is not done in a cruel or unusual manner . . . . .

To prove the crime of Second Degree Murder, the State must prove the following three elements beyond a reasonable doubt:

1. Maurice Anton Larry is dead.

2. The death was caused by the criminal act of Fredrick Wykme Brown.

3. There was an unlawful killing of Maurice Anton Larry by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life . . . . .

> To prove the crime of Manslaughter, the State must prove the following two elements beyond a reasonable doubt:
>
> 1. Maurice Anton Larry is dead.
>
> 2. Fredrick Wykme Brown intentionally caused the death of Maurice Anton Larry or [t]he death of Maurice Anton Larry was caused by the culpable negligence of Fredrick Wykme Brown.
>
> However, the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide as I have previously explained those terms.

Exh. 1 at 41-43

Here, there was no objection to the manslaughter instruction including the element of intent at trial, or even on direct appeal, because the manslaughter instruction provided to the jury was valid at that time.   The issue is whether the jury convicted Petitioner of second degree murder, as opposed to manslaughter, due the inclusion the element of intent in the manslaughter instruction. A review of the jury instructions provided, coupled with the evidence presented during trial, reveals Petitioner's trial was not fundamentally unfair, nor did the instruction deprive him of his due process rights.

Evidence introduced at trial revealed the following. Queenetta Marshal, Brown's sister, reluctantly testified that Brown agreed to participate in a robbery of the victim, which she and her friends admitted planning.   She related the events leading up to and what happened during the robbery and homicide of the

victim.   Exh. 14a at 196-200; Exh. 14b at 202-212, 217-220, 222-224, 225-228.   Veronica Joyner and Keasha Evans, who also helped plan the robbery, testified.   14b at 26-333, 334-401.

In pertinent part, the evidence introduced at trial showed that the three women saw the victim had money because the victim gave Evans money from his wallet as her birthday gift.   Exh. 14B at 202.   Thereafter, the three women developed a plan involving Brown to rob the victim for his money.   Brown agreed and changed into a black top to do so and took a gun from the closet.   Id. at 215-216.   During this time, the victim was outside the house talking to Joyner.   Id. at 217.   Before Brown shot the victim, he asked for the victim's money.   Id.   The victim and Brown began to scuffle.   Id.   During the scuffle, Brown shot the victim, twice. Id. at 224.   Brown emerged with only a scratch on his face from the encounter and the victim's money.   Id.   Brown gave his sister $20.00 and directed that he share the rest of the money ($40.00 total) with Joyner and Evans.   Id. at 229.   Marshal testified that she received enough money to go see a movie that night.   Id.

Officer Paul Leverette and Detective Brian Gederian, from the Fort Myers Police Department, also testified with regard to the investigation of the victim's murder and the development of Brown as a suspect.   Exh. 14c at 402-444, 464-46.   Leverette, as a responding officer, testified that when he arrived at the scene he saw a black male, who was dead, laying face down on the ground.

Exh. 14d at 406.  Leverette secured two black females as witnesses at the scene.  Id. at 411.  Gederian also testified as to scene and evidence that the victim had been shot.  Id. at 418. Gederian testified about the scope of the investigation and how the leads developed on three women (Evans, Joyner, and Marshal) and a man (Brown).  Id. at 420-424.  Gederian testified that Brown was arrested after law enforcement received three sworn statements from Evans, Joyner, and Marshal.  Id. at 420.  Brown did not testify.  Exh. 14c at 498-4999.

Petitioner's trial was not fundamentally unfair, nor did the instruction deprive of him due process, considering the evidence introduced established the required elements of second-degree murder.  Planning to rob the victim and carrying a gun to do so, that resulted in the shooting death the victim for $60.00 was sufficient evidence to show that Brown engaged in an act imminently dangerous to the victim and demonstrated a depraved mind without regard for human life.  Accordingly, in the alternative, Petitioner is denied relief on the merits of Ground Two.

### C. Ineffective Assistance of Counsel Claims

Grounds Three, Four, Five, and Seven all raise ineffective assistance of defense counsel claims.  The Court will address these grounds together.

### 1.  Ground Three

Petitioner contends that his defense attorney did not question juror Johnson concerning her unspecified "bias." Petition at 8. The Petition does not contain any other facts elaborating on this claim. Id.

In Response, Respondent refers this Court to the post-conviction court's order that summarily denied Petitioner relief. Response at 35. Respondent further explains that Petitioner takes issue with the questioning of juror Brown because Petitioner believes the questioning was insufficient to show that this juror could put aside any bias or prejudice. Id. at 36.

The Court finds ground three is exhausted to the extent Petitioner raised this claim in his Rule 3.850 motion and appealed the denial therefrom. In denying Petitioner relief on this claim, the postconviction court found as follows:

> In his motion, [Brown] does not allege that
> Juror Johnson was actually biased, but that
> trial counsel was ineffective for failing to
> further question Ms. Johnson for responding,
> "No, I don't think," after the prosecuting
> attorney asked her if her experience in
> another case would prohibit her from being
> fair and impartial in the case at bar. (T. 46-
> 7). The record reflects that Ms. Johnson was
> previously asked several questions by the
> prosecuting attorney regarding her background
> and experiences with the courts and trials.
> (T. 21). "A claim that counsel was
> ineffective for failing to 'follow-up' on
> questioning to establish grounds for a for-
> cause challenge has been held to be legally
> insufficient because such a claim can be based
> on nothing more than conjecture by the
> defendant." Soloranzo v. State, 25 So. 3d 19,

> 23 (Fla. 2d DCA 2009).  Accordingly, [Brown's]
> claim that further questioning of Ms. Johnson
> during voir dire might have led trial counsel
> to strike her from being on the jury is based
> on pure speculation and cannot support a claim
> of ineffective assistance of counsel.  Id.
> Accordingly, **Ground Three** is without merit and
> will be denied in the final order.

Exh. 14(d).

The Court finds that the State courts' decisions were neither contrary to, nor an unreasonable application Strickland.  The post-conviction court applied the Strickland standard to Petitioner's claims of ineffective assistance of counsel.  The post-conviction court reasonably determined that counsel did not render deficient performance that caused Petitioner prejudice because there was no indication in the record that juror Johnson required any additional questioning than that posed by the prosecuting attorney.  Because Petitioner's claim or juror bias was based on "pure speculation," the post-conviction court denied Petitioner relief.  Accordingly, Petitioner is denied relief on Ground Three of the instant Petition.

### 2.  Ground Four

Petitioner contends that defense counsel rendered ineffective assistance of counsel when counsel failed to present evidence that the crime was "committed by others," even though he made such comments during open statements.  Petition at 10.  Petitioner does not further elaborate on ground four in the Petition.

In Response, Respondent points out that the post-conviction court summarily denied Petitioner relief on this claim as legally insufficient.  Response at 37.  Respondent directs the Court to the post-conviction court's order.  Id. at 38.

The Court finds Ground Four is exhausted to the extent Petitioner raised the claim in his Rule 3.850 motion and appealed the denial therefrom.  In denying Petitioner relief on this claim, the post-conviction court found as follows:

> As to **Ground Four**, [Brown] asserts that trial counsel was ineffective for failing to present evidence to support opening statements that defendant did not commit the crimes.  Failure to present evidence promised during opening statements can support a claim of ineffective assistance of trial counsel provided a defendant's motion states with specificity what evidence should have been introduced to support the claim.  Avery v. State, 737 So. 2d 1166, 1167 (Fla. 2d DCA 1999).  In his motion, [Brown] fails to state what evidence should have been presented by trial counsel.  As a whole, [Brown] has failed to allege facts that, if true, would demonstrate that the performance of trial counsel fell below the appropriate standard of care, would demonstrate prejudice, and would demonstrate that trial counsel was ineffective within the meaning of Strickland.

Exh. 14d at 666-667.

The Court finds that the State courts' decisions were neither contrary to, nor an unreasonable application Strickland.  Nor was the decision an unreasonable application of the facts based on the evidence presented.   The post-conviction court applied the

standard set forth in <u>Strickland</u> to Petitioner's claims of ineffective assistance of counsel, but noted that Petitioner was not able to point to any specific evidence that his defense counsel should have presented concerning any "others" who committed the crime.   Likewise, the instant Petition fares no better. Petitioner is denied relief on Ground Four.

> **3.  Ground Five**

Petitioner contends that defense counsel rendered ineffective assistance when counsel failed to properly investigate the case. Petition at 12.  Petitioner specifically claims as follows:

> Petitioner told counsel to call Damion J. Shearod as a witness.  Petitioner put Damion J. Shearod on his docke[t] to be call[ed] at trial.  Damion J. Shearod told me of other evidence that Petitioner told trial counsel to investigate.  He did nothing. . . . . The FMPD raided the room that was in my name at the LaQuinta Hotel.  I ask[ed] him to get records form their [sic] convenience store.

<u>Id.</u>

In Response, Respondent directs this Court to the post-conviction court's order addressing this claim raised in Petitioner's Rule 3.850 motion.  Response at 39.  Respondent argues that the post-conviction court's decision was reasonable. With regard to not calling Shearod as a witness, Respondent points out that Petitioner never showed the required element that Shearod was available to testify.  <u>Id.</u> at 40.

The Court finds Ground Five is exhausted to the extent Petitioner raised the claim concerning counsel's failure to call Shearod in his Rule 3.850 motion and appealed the adverse ruling.[6] In denying Petitioner relief on the portion of the claim concerning counsel's failure to investigate witness Damion Shearod, the post-conviction court found as follows:

> A defendant claiming ineffective assistance of counsel for failing to interview or call witnesses must allege: 1) the identity of the witnesses, 2) the substance of their testimony, 3) how Defendant was prejudiced, 4) whether the witnesses were available to testify. Spera v. State, 971 So. 2d 754, 756 (Fla. 2007) (citing Nelson v. State, 875 So. 2d 579, 584 (Fla. 2004)). In his motion, [Brown] fails to address Shearod's availability to testify at trial. As to this claim [Brown'] Ground 5, [Brown] has failed to allege facts that, if true, would demonstrate that the performance of trial counsel fell below the appropriate standard of care, would demonstrate prejudice, and would demonstrate that trial counsel was ineffective within the meaning of Strickland. [Brown] was given an opportunity to correct the legal deficiencies with this clam in Ground 5. Brown, 36 So. 2d 3d 186; Shelton, 974 So. 2d 1202. However, [Brown's] amended Ground 5 fails to formulate a facially sufficient claim anew as it relates to counsel's alleged ineffective assistance for failing to call Damion Shearod to testify, and therefore, will be denied by final order.

Exh. 14d at 667-670.

---

[6] However, to the extent Petitioner references LaQuinta and records at a convenience store in the instant Petition, such claims were not raised in his Rule 3.850 and are therefore deemed unexhausted and procedurally defaulted.

The Court finds that the Florida court's denial of postconviction relief did not result in a decision that was "contrary to, or involved an unreasonable application of" Strickland, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the Florida court.   Significantly, the post-conviction court determined that Petitioner did not allege sufficient facts establishing how or why counsel was ineffective in failing to call Damion Shearod as a witness.   Absent these facts, Petitioner cannot establish either deficient performance or prejudice under Strickland.   Accordingly, Petitioner is denied relief on Ground Five.

### 4.  Ground Six

Petitioner alleges defense counsel rendered ineffective assistance by not calling "alibi witnesses."   Petition at 13. Petitioner contends that his trial was "one sided" and that his attorney "did not present his side."   Id.   The Petition does not contain any other facts to elaborate on this claim, or identify by name the alleged alibi witnesses.

A review of Petitioner's post-conviction records reveals that Petitioner raised a claim concerning his defense counsel's ineffective assistance for not calling alibi witnesses in his Rule 3.850 motion (as ground six).   Exh. 15 at 984.   The alibi witnesses were identified as Janelle Odom (Petitioner's mother) and Sonya

Morris.  Id.  The postconviction court held an evidentiary hearing

on this claim, at which Ms. Morris, Ms. Odom, and Petitioner's

defense attorney, Jay Brizel, testified.  Id. at 985.  After the

evidentiary hearing, the post-conviction court entered an order

denying Petitioner relief.   Id.  In pertinent part, the post-

conviction court ruled as follows:

> Even though, in hindsight, [Brown's] trial
> counsel may have approached this case
> differently or may have recommended that
> [Brown] proceed to trial with a different
> defense strategy (e.g., utilized an alibi
> defense), that does not necessarily or
> automatically lead to the conclusion that
> defense counsel was deficient or that the
> outcome of the case would have had any
> reasonable likelihood of being different.
> Stano v. State, 520 So. 2d 278, 281, n. 5 (Fla.
> 1988).  In general, "[a]bsent extraordinary
> circumstances, strategic or tactical
> decisions by trial counsel are not grounds for
> ineffective assistance of counsel claims."
> Kenon v. State, 855 So. 2d 654 (Fla. 1988).
> [Brown] has failed to overcome the presumption
> that trial counsel's performance was not
> considered sound trial strategy.  Ridel v.
> State, 990 So. 2d 581 (Fla. 3d DCA 2008).
> Furthermore, the Court finds that [Brown's],
> Ms. Odom's, and Ms. Morris' testimonies given
> at the evidentiary hearing regarding an alibi
> defense lack credibility.  See Happ v. State,
> 922 So. 2d 182 (Fla. 2006).  The testimony of
> the two alibi witnesses, as well as [Brown's]
> testimony, was in direct conflict with each
> other and in direct with the trial testimony
> of Queenetta Marshal, Veronica Joyner, and
> Keasha Evans (T. 154-217, 221-280, 289-356).

Exh. 15 at 986-987.


The Court finds that the Florida court's denial of post-conviction relief did not result in a decision that was "contrary to, or involved an unreasonable application of" <u>Strickland</u>, or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the Florida court. Significantly, the post-conviction court found the alleged alibi witnesses lacked credibility.  And, further found that even if defense counsel second guessed his decision not to develop the alibi defense, such a decision was strategic and reasonable considering three witnesses testified as to Brown's involvement in the robbery plan and subsequent shooting death of the victim. <u>Fugue v. Sec'y Dep't of Corr.</u>, 409 F. App'x 243, 246 (11th Cir. 2010).  Petitioner is denied relief on Ground Six.

### 5. Ground Seven

Petitioner claims that defense counsel rendered deficient performance by failing to object to the jury instruction on "improper exhibition of a firearm." Petition at 15.  The Petition does not contain any other factual allegations to elaborate on this claim.  <u>Id.</u>

In Response, Respondent refers the Court to the post-conviction court's order denying Petitioner relief on this claim. Response at 44.  Respondent submits that the post-conviction court's decision is entitled to deference, was not contrary to or an unreasonable application of <u>Strickland</u>, and was not an

unreasonable determination of the facts based on the evidence presented.

The Court finds Ground Seven is exhausted to the extent Petitioner raised the claim in his Rule 3.850 motion and appealed the adverse ruling.  In denying Petitioner relief on this claim, the post-conviction court found as follows:

> A lesser offense may be a category-two permissive lesser included offense if it has at least one statutory element not contained in the greater offense and its elements are alleged in the accusatory pleading and proven at trial.  Taylor v. State, 608 So. 2d 804, 805 (Fla. 1992).  The elements of improper exhibition of a dangerous weapon or firearm include that the defendant 1) had or carried a weapon, 2) exhibited the weapon in a rude, careless, angry, or threatening manner, and 3) did so in the presence of one or more persons. § 790.10, Fla. Stat.; Fla. Std. Jury Instr. (Crim.) 10.5.  The record reflects that Defendant was charged in the information with using a firearm to rob and kill the victim. Additionally, the evidence presented at trial supports the lesser included offense of improper exhibition of a firearm. "Instruction on a permissive lesser included offense may be given only when the trial court determines that the pleadings and the evidence support the charge." Coissy v. State, 957 So. 2d 53, 54 (Fla. 4th DCA 2007) (citing Higgs v. State, 801 So. 2d 269, 270 (Fla. 4th DCA 2001)).  The jury was properly instructed by the Court. (T. 498-523).  "Counsel cannot be deemed ineffective for failing to make a meritless objection." Hitchcock, 991 So. 2d at 361.  Accordingly, Defendant's Ground 7 is without merit and will be denied in the final order.

Exh. 14d at 671.

The Court finds that the State courts' decisions were neither contrary to, nor an unreasonable application *Strickland*. Nor was the decision an unreasonable application of the facts based on the evidence presented. The post-conviction court applied the standard set forth in *Strickland* to Petitioner's claims of ineffective assistance of counsel, but noted that Petitioner could not show deficient performance because raising such a claim about the jury instruction would have been meritless. Petitioner is denied relief on Ground Seven.

ACCORDINGLY, it is hereby

**ORDERED**:

1.   The Petition for Writ of Habeas Corpus (Doc. #1, "Petition") is **DENIED** with prejudice.

2.   The Clerk of Court shall enter judgment accordingly, terminate any pending motions and deadlines, and close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking to appeal a district court's final order denying his petition writ of habeas has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003)(citations omitted).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Fort Myers, Florida on this   28th   day of September, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA: ftmp-1
Copies: All Parties of Record